# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RODNEY McCAULEY, et al., | ) |
| Plaintiffs, | ) |
| -vs- | ) Case No. CIV-04-0807-F |
| HALLIBURTON ENERGY SERVICES, INC., | ) |
| Defendant. | ) |

## **O R D E R**

Before the court is Defendant's Motion for Summary Judgment, filed September 1, 2006 (doc. no. 67). With leave of court, plaintiff filed his response on October 16, 2006, and defendant replied thereto on October 30, 2006. Upon due consideration of the parties' submissions, the court makes its determination.

Plaintiff, Rodney McCauley (McCauley), brings this action seeking damages against defendant, Halliburton Energy Services, Inc. (Halliburton), for injuries sustained as a result of Halliburton's alleged negligence. Plaintiffs, Jeri McCauley, Garrison McCauley, Madison McCauley and Whitney McCauley (wife and children of McCauley), also seek damages against Halliburton for loss of consortium. In its motion, Halliburton seeks summary judgment on the alleged claims on the grounds that it owed no duty to McCauley and that McCauley assumed the risk of injury by knowingly using unsafe work practices.

The following facts are undisputed or viewed in a light most favorable to McCauley, as the non-moving party. McCauley was employed by Halliburton from 1984 to 2004. His final job title with Halliburton was Electronics Technician. In

addition to his employment, McCauley owned and operated McCauley's Insulation as a sole proprietor.

On the morning of December 2, 2002, McCauley was asked by David Ensey ("Ensey"), a supervisor of Technology, Shops and Labs, to apply foam insulation to a bulk storage tank at Halliburton's facilities for an equipment test to be performed the following day. McCauley traveled from his office at the Technology Center to Plant 2 where the tank was located to inspect the tank. When McCauley arrived at Plant 2, the tank was located inside of a building while a metal support base was being welded to it. McCauley asked that the tank be moved to an off-site location so that he could use a "scissor lift" in the application process. McCauley was informed that the tank could not be moved to an off-site location because it was needed the next morning for testing. McCauley told Ensey's subordinates that the tank would at least have to be moved outside the building because of the overspray that would result during the application process. McCauley was advised that moving the tank outside of the building was not a problem. He was also informed by one of Ensey's subordinates that "everything you need will be right outside [the] garage door when you get back."

McCauley returned to Plant 2 on the evening of December 2, between 6:00 p.m. and 8:00 p.m., to perform the insulation job. McCauley brought a helper with him, Montie Blair ("Blair"), who was not a Halliburton employee. The tank had been moved to outside as requested. A forklift with a wooden pallet on it had been left near the tank. McCauley concluded from the earlier statement of Ensey's subordinate that Halliburton intended that he use the forklift and pallet as a "man-lift" to elevate himself during the job. Blair operated the forklift while McCauley performed the insulation work. Approximately two hours into the job, the pallet on the forklift shifted and McCauley fell approximately eight to ten feet to the ground.

Under Oklahoma law, an independent contractor doing work on another's premises is considered an invitee for purposes of negligence liability. McKinney v.

Harrington, 855 P.2d 602, 604 (Okla. 1993). A landowner has no duty to protect an invitee from open and obvious dangers. However, a landowner who has engaged an independent contractor to do work on his premises owes the independent contractor and its employees "a duty to keep the premises reasonably safe for the performance of the work." *Id*. " This duty applies only to conditions or defects in the nature of hidden dangers, traps, snares or pitfalls that are not known or readily observed by the invitee." *Id*.

Halliburton contends that even if its personnel led McCauley to conclude that he was to use the pallet and forklift as a man-lift, the danger involved in using the pallet and forklift as a man-lift was not hidden. Halliburton also contends that working at heights six feet or more above ground without fall protection equipment was not a hidden danger. Halliburton contends that it owed no duty to protect or warn McCauley of the dangers cited by McCauley because use of the pallet on a forklift as a man-lift and working without fall protection were open and obvious dangers known to McCauley.

Even if the court were to conclude that Halliburton owed McCauley a duty to protect or to warn, Halliburton asserts that it is still entitled to summary judgment on the basis that McCauley assumed the risk of injury by choosing to use the pallet with the forklift as a man-lift without any fall protection.

The question of whether a danger is open and obvious is not always one of law. The issue can present an issue for the jury. Phelps v. Hotel Mgmt., Inc., 925 P.2d 891, 894 (Okla. 1996); Jack Healey Linen Service Co. v. Travis, 434 P.2d 924, 927-28 (Okla. 1967); Henryetta Construction Co. v. Harris, 408 P.2d 522, 526 (Okla. 1965). Having carefully reviewed the record in a light most favorable to McCauley and based upon the particular facts of this case, the court concludes that whether McCauley confronted open and obvious hazards are questions of fact for the jury.

3

Although not discussed by the parties, Section 388 of the Restatement (Second) of Torts, which relates to the supplying of a chattel known to be dangerous, may be relevant to this case. Comment k of § 388 reads in pertinent part:

> One who supplies a chattel to others to use for any purposes is under a duty to exercise reasonable care to inform them of its dangerous character insofar as it is known to them, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made.

In the circumstances presented by this record ( McCauley having been told that he would have everything he needed to perform the work he contracted to perform, and having had no knowledge as to the location or availability of a man-cage or safety harness at the facility, and having worked after hours at the facility with a requirement imposed by Halliburton that he finish the job that night), the court concludes that there are issues of fact as to whether Halliburton breached a duty to provide premises reasonably safe for the performance of the contracted work and to exercise reasonable care to inform McCauley of the dangers related to the use of the pallet and forklift without fall protection.

As to the assumption of the risk defense, that defense applies "only where the person alleged to have assumed is found to have known or have been charged with knowledge of the danger." Anderson v. Northwestern Elec. Co-op., 760 P.2d 188, 191-192 (Okla. 1988). "[F]amiliarity with existing physical conditions which are responsible for a party's injury or mere knowledge of the danger without full appreciation of the risk will not bar recovery." Id. at 192. The evidence in this case

is not so one-sided as to justify entry of judgment as a matter of law.  The court concludes that this case should proceed to trial.

Based upon the foregoing,  Defendant's Motion for Summary Judgment, filed September 1, 2006 (doc. no. 67), is **DENIED**.

DATED this 22nd day of December, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0807p033(pub).wpd